**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANGEL JENKINS, on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**CHESTER A. ASHER, INC., d/b/a ASHER'S CHOCOLATE CO.,**<br><br>Defendant. | Civil Action No.: ___________<br><br>**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |

Plaintiff ANGEL JENKINS ("Plaintiff" or "Ms. Jenkins"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against CHESTER A. ASHER, INC., d/b/a ASHER'S CHOCOLATE CO. ("Asher's" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.ashers.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Angel Jenkins is a resident of New York County, New York, who is permanently disabled due to Retinitis Pigmentosa, a degenerative retinal disease causing severe, permanent bilateral vision loss that meets the criteria for legal blindness. Ms. Jenkins was examined on April 12, 2025, by her treating physician, Dr. Robert Friedman, M.D., O.D., of the Mount Sinai Morningside Eye Center, 1001 Park Avenue, New York, NY 10028. Dr. Friedman completed New York State Office of Children and Family Services Form OCFS-4599, documenting Condition #3: "Blindness, better eye, with visual field limitation less than 20 degrees." Ms. Jenkins is registered with the New York Commission for the Blind under Registration No. A.19038. Her vision loss is permanent and irreversible.

2. As a result of her permanent visual impairment, Ms. Jenkins relies exclusively on NVDA (NonVisual Desktop Access) and JAWS (Job Access With Speech) screen-reading software to access the internet and to use internet-connected computers. These programs convert on-screen text, images, and other digital content into audible speech output or refreshable Braille output that Ms. Jenkins can process through hearing or touch. Accessible coding is not optional for Ms. Jenkins — it is the only means by which she can access, navigate, and interact with websites and online services. When a website is not designed and coded in a manner that is compatible with screen-reading software, Ms. Jenkins is entirely unable to use that website. Exhibit A.

3. Ms. Jenkins is a food-conscious consumer who shops online for specialty and gift-quality food products because, as a legally blind individual, she cannot independently navigate retail store shelves or read in-store packaging. In 2026, Ms. Jenkins sought to independently browse and purchase premium chocolate confections from Asher's Chocolate Co., one of the oldest and most respected American confectionery brands, family-owned continuously for over 130 years and now in its fifth generation of family ownership. Defendant operates www.ashers.com as its direct-to-consumer ecommerce platform, offering its full line of chocolate-covered confections — including signature products such as Dark Chocolate Covered Graham Crackers, a wide selection of boxed chocolate gift assortments, and one of the most extensive sugar-free chocolate selections available from any single American confectioner. Ms. Jenkins specifically sought to purchase: (a) Asher's Dark Chocolate Covered Graham Crackers, a signature Asher's product; (b) gift-ready chocolate assortments from Asher's for personal gifting occasions, selected for Asher's brand heritage and gift-quality packaging; and (c) sugar-free chocolate products, for which Asher's offers a uniquely broad selection suited to her dietary preferences. Ms.

Jenkins chose www.ashers.com specifically because she wanted Asher's branded products — not generic chocolate from any other source. The combination of Asher's five-generation brand heritage, its signature chocolate-covered pretzel and graham cracker products, its unmatched sugar-free selection, and its gift packaging options is not replicated by any other confectioner. Because Ms. Jenkins cannot independently navigate retail stores, read in-store labels, or visually compare products on shelves, accessible online shopping through the manufacturer's own website is the only reliable means by which she can evaluate, select, and purchase these specific products.

4. According to the United States Census Bureau, approximately 7.6 million Americans report a vision disability. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, was enacted by Congress to eliminate discrimination against individuals with disabilities and to guarantee persons with disabilities equal access to the opportunities and privileges available to members of the general public. Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. The United States Department of Justice ("DOJ") has affirmed since the mid-1990s that the ADA applies to websites and online services. On March 18, 2022, the DOJ issued formal guidance, "Guidance on Web Accessibility and the ADA," reaffirming that the ADA requires websites of covered entities to be accessible to persons with disabilities and that the Web Content Accessibility Guidelines ("WCAG") provide the recognized standard for measuring web accessibility.

5. The internet has become an indispensable tool for participation in daily life — including commerce, communication, education, healthcare, and civic life. For blind and visually impaired individuals, equal access to the internet is not a convenience but a necessity. The internet provides blind individuals with a degree of independence and access to goods and services that would otherwise require the assistance of another person. When websites fail to comply with recognized

accessibility standards, blind and visually impaired users are effectively excluded from online commerce and denied the same degree of independence and participation that sighted users enjoy as a matter of course.

6. Screen-reading software such as NVDA and JAWS interprets the underlying code of a webpage — its HTML structure, ARIA attributes, alternative text, heading hierarchy, and form labels — to render the page as audible speech or Braille output. For a screen reader to function correctly, the website's code must be written in conformance with established accessibility standards: product images must have meaningful alternative text so the screen reader can describe them; interactive controls such as buttons, form fields, and quantity selectors must have accessible names so the screen reader can announce their purpose; heading structure must be logical and properly ordered so the screen reader can provide navigational landmarks; and ARIA attributes must be correctly implemented so the screen reader can convey the roles, states, and values of interactive components. When a website's code fails to meet these requirements — as www.ashers.com does in numerous and pervasive respects, including missing alternative text on product images, unlabeled buttons and form controls, broken ARIA references, and improper heading structure — the screen reader is unable to translate the website's content into usable output, and the blind user is completely excluded from the website's content and functionality.

7. The World Wide Web Consortium ("W3C"), the international standards body for the web, has published the Web Content Accessibility Guidelines ("WCAG"), currently in version 2.1, which set forth the technical standards for making web content accessible to persons with disabilities. WCAG 2.1 organizes accessibility requirements around four principles: content must be Perceivable, Operable, Understandable, and Robust ("POUR"). WCAG 2.1 Level AA compliance is the recognized industry benchmark for ADA website accessibility and has been

designated by the DOJ as the applicable standard for entities covered by the ADA. Asher's violations documented in this Complaint include failures at WCAG 2.1 Level A — the lowest minimum tier of accessibility — meaning that the barriers confronting Ms. Jenkins are among the most fundamental and basic accessibility deficiencies that exist.

8. Plaintiff brings this civil action against Chester A. Asher, Inc., d/b/a Asher's Chocolate Co., the operator of www.ashers.com, for failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to the Website constitutes a violation of Plaintiff's rights under Title III of the ADA, 42 U.S.C. § 12182, and applicable state and city law.

9. On April 18, 2026, May 9, 2026, and June 2, 2026, Ms. Jenkins attempted to access www.ashers.com using her screen-reading software to browse and purchase chocolate confections, including the Dark Chocolate Covered Graham Crackers, gift chocolate assortments, and sugar-free chocolate products. On each occasion, she was unable to complete her intended purchases due to pervasive accessibility barriers that rendered the Website incompatible with her screen-reading software.

10. Despite multiple attempts, Ms. Jenkins was unable to independently complete her objectives due to pervasive access barriers. A SortSite version 35 accessibility audit of www.ashers.com identified systemic WCAG 2.1 Level A and AA violations across the Website, including but not limited to: missing alternative text on product images; unlabeled form controls, buttons, and interactive elements; improper heading structure and broken ARIA references; structural coding errors disrupting screen-reader interpretation; and shopping-page failures preventing product browsing and purchase. A separate WAVE audit of the main Asher's Shop

page revealed 240 Errors — a figure that, standing alone, documents the comprehensive inaccessibility of the Website's primary product browsing interface. A second WAVE audit of the Dark Chocolate Covered Graham Cracker product page — the specific product Ms. Jenkins sought to purchase on April 18, 2026 — identified 16 Errors on that single product page, including missing alternative text, unlabeled controls, and broken ARIA references that directly prevented Ms. Jenkins from evaluating the product and completing her purchase. .Exhibit B

11. Ms. Jenkins intends to return to www.ashers.com to make purchases once the accessibility barriers are remediated. She has a genuine, ongoing desire to purchase Asher's Dark Chocolate Covered Graham Crackers, gift-ready chocolate assortments, and sugar-free chocolate products — products she cannot obtain with the same brand authenticity, freshness, and gift-quality packaging from any other online source. Her intent to return is not speculative — it is grounded in her specific and ongoing desire for Asher's branded products available only through Defendant's Website and in her inability to independently evaluate or purchase confections in physical retail stores. She is deterred from returning to the Website now solely because it remains inaccessible to her screen-reading software.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and pursuant to 42 U.S.C. § 12188, which confers standing to seek remedies under the ADA. This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202.

13. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal ADA claims

that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County, New York, within this District; Plaintiff accessed www.ashers.com from within this District; and Plaintiff personally experienced the discriminatory accessibility barriers described in this Complaint within this District. Defendant is subject to personal jurisdiction in this District because it purposefully directs its business activities toward New York consumers through its interactive direct-to-consumer ecommerce Website, ships products directly to New York residents, and derives substantial revenue from New York consumers. *See Velazquez v. Don Roberto Jewelers*, No. 1:22-cv-08915 (S.D.N.Y. 2022); *Romero v. 88 Acres Foods*, No. 1:20-cv-07172 (S.D.N.Y. 2020). The DOJ has confirmed that the ADA applies to the websites and ecommerce platforms of covered entities regardless of where the business is physically located. This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202, which authorize this Court to declare the rights of the parties and to enforce such declarations by appropriate order.

## PARTIES

15. Plaintiff Angel Jenkins is a natural person residing at 228 West 124th Street, Apt. #23, New York, NY 10027, in New York County, within this District. Ms. Jenkins is legally blind as a result of Retinitis Pigmentosa, a degenerative retinal condition resulting in severe, permanent bilateral vision loss, as documented by Dr. Robert Friedman, M.D., O.D., of the Mount Sinai Morningside Eye Center, on April 12, 2025, in Form OCFS-4599, Condition #3. Ms. Jenkins is registered with the New York Commission for the Blind under Registration No. A.19038. Ms. Jenkins has a "disability" within the meaning of 42 U.S.C. § 12102 of the ADA and is a member

of the protected class of individuals with disabilities under Title III of the ADA.

16. Defendant Chester A. Asher, Inc., d/b/a Asher's Chocolate Co. ("Asher's"), is a privately held Pennsylvania corporation with its principal place of business, factory, and corporate office located at 80 Wambold Road, Souderton, Pennsylvania 18964. Defendant also operates a retail location at 19 Susquehanna Ave., Lewistown, PA 17044. Founded in 1892 by Chester A. Asher in Philadelphia, Pennsylvania, Asher's Chocolate Co. is one of the oldest continuously family-owned confection companies in the United States, now in its fifth generation of family ownership. Jeff Asher serves as President, Chief Executive Officer, and Chairman of the Board. Defendant employs between 201 and 500 employees. Defendant owns and operates www.ashers.com, a highly interactive direct-to-consumer ecommerce platform through which it markets, displays, and sells chocolate confections — including chocolate-covered snacks, boxed chocolates, gift assortments, seasonal confections, and sugar-free chocolate products — to consumers throughout the United States, including consumers in the State of New York and this District. Defendant is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), and is subject to the obligations imposed by Title III.

## STATEMENT OF FACTS

### A. Plaintiff's Visual Impairment and Use of Screen-Reading Software

17. Plaintiff Angel Jenkins suffers from Retinitis Pigmentosa, a degenerative disease of the retina that causes the progressive destruction of photoreceptor cells and results in severe, permanent bilateral vision loss. Ms. Jenkins's condition causes deterioration of her peripheral visual field and impairment of her central vision, resulting in a condition meeting the criteria for legal blindness. On April 12, 2025, Ms. Jenkins was examined by her treating physician, Dr. Robert Friedman, M.D., O.D., at the Mount Sinai Morningside Eye Center, 1001 Park Avenue,

New York, NY 10028. Dr. Friedman completed New York State Office of Children and Family Services Form OCFS-4599, documenting Ms. Jenkins's diagnosis as Condition #3: "Blindness, better eye, with visual field limitation less than 20 degrees." Ms. Jenkins is registered with the New York Commission for the Blind under Registration No. A.19038. Her condition is permanent and irreversible, and her visual impairment will not improve with treatment.

18. As a direct and necessary consequence of her permanent visual impairment, Ms. Jenkins relies entirely on screen-reading software to access the internet and to use internet-connected devices. She uses NVDA (NonVisual Desktop Access) and JAWS (Job Access With Speech), which are the most widely used screen-reading applications for Microsoft Windows. These programs process the underlying code of a webpage and render it as audible speech through the computer's speakers or as output on a refreshable Braille display that Ms. Jenkins can read through touch. Ms. Jenkins is entirely dependent on WCAG 2.1-compliant coding in order to access web content through these programs. Without such coding, the screen reader cannot translate the website's content and functionality into usable output.

19. When a website is not coded in conformance with WCAG 2.1, Ms. Jenkins's screen-reading software cannot translate the website's content into usable speech or Braille output. Specifically: if product images lack meaningful alternative text, NVDA either skips the images silently or announces raw file-name strings that convey no descriptive information; if interactive controls such as buttons and form fields lack accessible names, NVDA announces only "button" or "link" with no description of purpose; if heading structure is improperly implemented, NVDA cannot provide Ms. Jenkins with a logical navigational map of the page; and if ARIA attributes are broken or incorrectly applied, NVDA emits errors or misidentifies the roles and states of interactive components. The cumulative effect of these failures is that Ms. Jenkins cannot navigate

the Website, cannot select or evaluate products, cannot add items to her cart, and cannot complete the checkout process — all of which she could accomplish effortlessly were the Website coded in conformance with WCAG 2.1. She is thereby denied the same access to Defendant's goods and services that sighted users enjoy without any accessibility barrier.

**B. Defendant's Website and Products**

20. Defendant Chester A. Asher, Inc. owns and operates www.ashers.com, a highly interactive direct-to-consumer ecommerce platform offering a broad range of premium chocolate confections, including chocolate-covered pretzels, chocolate-covered graham crackers, and other chocolate-covered snacks; boxed chocolate assortments; seasonal confections; sugar-free chocolate products; and gift assortments, all available for direct purchase and nationwide delivery. Founded in 1892 and now in its fifth generation of family ownership, Asher's Chocolate Co. is one of the oldest and most respected American confectionery brands, known nationwide for its signature chocolate-covered pretzel and graham cracker products and for its wide selection of sugar-free chocolates. Defendant generates substantial revenues through the Website from consumers throughout the United States, including New York State.

21. The Website includes numerous highly interactive components that are central to the consumer purchasing experience: product collection and shop pages with category navigation and product listings; individual product pages featuring product images, option selectors, quantity controls, and "Add to Cart" buttons; a product search function; promotional and seasonal content pages; a shopping cart interface; and a full multi-step checkout process. Each of these components must be designed and coded in conformance with WCAG 2.1 in order for blind and visually impaired users to have equal and independent access to the Website's goods, services, and functionality.

22. Ms. Jenkins specifically sought to purchase the following products through www.ashers.com: (a) Asher's Dark Chocolate Covered Graham Crackers, a signature Asher's product sold through the Website's individual product pages; (b) gift-ready chocolate assortments available through Defendant's shop and collection pages, selected specifically for Asher's brand heritage, five-generation family ownership story, and gift-quality packaging; and (c) sugar-free chocolate products available through Defendant's Website, for which Asher's offers a uniquely broad selection suited to Ms. Jenkins's dietary preferences.

23. None of the foregoing products — or any product with equivalent Asher's brand heritage, five-generation family ownership story, signature chocolate-covered formulations, and gift packaging options — is available through any other online retailer with the same authenticity, freshness, or selection. Ms. Jenkins chose www.ashers.com specifically because she wanted Asher's branded products, and this brand exclusivity made Defendant's Website the only source through which she could obtain the specific products she sought. Defendant's Website is the direct source for Asher's branded products, offering the widest selection, direct-from-manufacturer freshness, and gift packaging options not available from third-party resellers.

## C. Prior ADA Litigation and Constructive Notice

24. The DOJ has affirmed the applicability of the ADA to websites since the mid-1990s and reaffirmed that position in formal guidance issued on March 18, 2022. WCAG 2.1 has been recognized as the applicable industry standard for web accessibility since its publication in 2018. Hundreds of ADA website accessibility actions are filed each year in the Southern District of New York alone, reflecting the well-established and widely publicized nature of these obligations. Any operator of a nationwide direct-to-consumer ecommerce platform — including Defendant — has had constructive notice of its ADA website accessibility obligations for many years. Defendant

has operated www.ashers.com as a national direct-to-consumer ecommerce platform and has had ample time, notice, and resources to bring the Website into conformance with WCAG 2.1 Level AA.

25. Defendant's failure to remediate the pervasive accessibility barriers documented by the SortSite version 35 accessibility audit and the WAVE audits — including 240 errors identified on the main Shop page and 16 errors identified on the Dark Chocolate Covered Graham Cracker product page — reflects either a deliberate failure to comply with Defendant's legal obligations under Title III and applicable state and city law, or a grossly negligent disregard of those obligations. In either case, Defendant's failure to bring its publicly accessible ecommerce platform into conformance with recognized accessibility standards constitutes a discriminatory denial of access to blind and visually impaired consumers.

**D. Plaintiff's Attempts to Access the Website and Barriers Encountered**

26. On April 18, 2026, Ms. Jenkins accessed www.ashers.com using NVDA to locate and purchase Asher's Dark Chocolate Covered Graham Crackers, a signature product she specifically sought and which is sold through the Website's individual product pages. She navigated to the product page for the Dark Chocolate Covered Graham Crackers. On that specific page — which the WAVE audit confirmed contained 16 accessibility errors — product images lacked meaningful alternative text, causing NVDA to either skip the images silently or read aloud raw file-name strings rather than descriptions of the product depicted. Controls on the product page, including the "Add to Cart" button and option selectors, lacked accessible names, causing NVDA to announce only "button" with no description of the control's purpose. Broken ARIA references on the page caused NVDA to emit errors rather than voicing the intended roles and states of interactive elements. Ms. Jenkins was unable to evaluate the product or complete a purchase. She

left the Website without obtaining the Dark Chocolate Covered Graham Crackers she sought.

27. On May 9, 2026, Ms. Jenkins returned to www.ashers.com to browse additional products, including assorted chocolate gift selections and sugar-free chocolate options. She navigated to the main Asher's Shop page — which the WAVE audit confirmed contained 240 accessibility errors — intending to browse Defendant's product catalog for gift assortments and sugar-free products. The Shop page was comprehensively inaccessible: product images throughout the page lacked meaningful alternative text; links and buttons throughout the page lacked accessible names, causing NVDA to announce "link" and "button" without any contextual information; broken ARIA references and invalid ARIA roles caused NVDA to emit errors and skip or misread product information and interactive elements; and improper heading structure disrupted NVDA's ability to provide Ms. Jenkins with a navigational map of the page. The combined effect of these failures made the Shop page effectively unusable with NVDA. Ms. Jenkins could not effectively browse product categories, identify available products, compare confection options, navigate from the Shop page to individual product pages, or identify the gift assortments and sugar-free products she sought. She left the Website without obtaining any of the products she sought.

28. On June 2, 2026, Ms. Jenkins made a third attempt to access www.ashers.com, hoping that the accessibility barriers she had encountered on her two prior visits had been remediated. The same barriers persisted without correction. She attempted to browse products, compare confection options, and complete a purchase. The product images continued to lack meaningful alternative text; interactive controls continued to lack accessible names; broken ARIA references continued to cause NVDA to emit errors; and improper heading structure continued to prevent Ms. Jenkins from forming a coherent navigational map of the pages she visited. She remained

unable to independently and reliably search products, understand key product content, navigate interactive shopping features, or complete the checkout process using her screen-reading software. No remediation had occurred. Ms. Jenkins again left the Website without obtaining the products she sought.

29. The specific barriers that Ms. Jenkins encountered on her three visits to www.ashers.com, as documented by the SortSite version 35 accessibility audit and the WAVE audits, include the following:

- **Missing alternative text on product images (site-wide) — WCAG 2.1 Success Criterion 1.1.1, Failure F65:** Product images throughout www.ashers.com, including on the Dark Chocolate Covered Graham Cracker product page and the main Shop page, lacked meaningful alternative text. When Ms. Jenkins attempted to view product images using NVDA, her screen reader either skipped the images silently or read aloud raw file-name strings rather than meaningful descriptions of the products depicted. For a legally blind user, alternative text on product images is the sole means of receiving the visual information conveyed by the image; without it, Ms. Jenkins received no information about the appearance, packaging, color, or visual identity of the chocolate products she sought to evaluate. This barrier was confirmed by the WAVE audit of the Dark Chocolate Covered Graham Cracker product page (16 errors) and the WAVE audit of the Shop page (240 errors), and prevented Ms. Jenkins from identifying and evaluating the products she visited the Website to purchase.
- **Unlabeled and improperly labeled form controls, buttons, and interactive elements (site-wide) — WCAG 2.1 Success Criteria 1.3.1, 4.1.2, Failure F68:** Form controls, "Add to Cart" buttons, quantity selectors, option selectors, and other interactive elements

throughout the Website lacked accessible names or labels, in violation of WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value) and Failure F68. When Ms. Jenkins encountered these controls using NVDA, her screen reader announced "button," "link," or similar generic role announcements with no description of the control's purpose. On the Dark Chocolate Covered Graham Cracker product page, the "Add to Cart" button and option selectors were among the controls affected. As a result, Ms. Jenkins could not determine the purpose of the controls she needed to use to select the product and initiate a purchase, and was completely unable to add the item to her cart or proceed toward checkout.

- **Broken ARIA references and invalid ARIA roles (site-wide) — WCAG 2.1 Success Criteria 1.3.1, 4.1.2:** Interactive elements and content regions throughout the Website contained broken ARIA references — ARIA attributes referencing element IDs that did not exist on the page — and invalid ARIA roles that did not conform to the ARIA specification. When NVDA encountered these broken references on the Shop page and product pages, it emitted errors rather than voicing the intended roles, states, and descriptions of interactive elements. This caused NVDA to skip or misread product information, landmark regions, and interactive controls, preventing Ms. Jenkins from understanding the structure of the pages she visited and from interacting with their content.
- **Improper heading structure and disrupted reading order (site-wide) — WCAG 2.1 Success Criterion 1.3.1:** The Website's pages used improper heading hierarchy — skipping heading levels, using empty headings, or relying on visual styling rather than semantic heading markup to convey page structure. Screen readers rely on heading

structure to provide users with a navigable outline of page content; when headings are improperly structured or absent, NVDA cannot provide Ms. Jenkins with a coherent map of the page. This barrier prevented Ms. Jenkins from efficiently navigating the Shop page and product pages to locate the products she sought, as she was unable to use NVDA's heading navigation commands to orient herself and move between sections.

- **Shop-page pervasive accessibility failures (240 WAVE errors on main Shop page) — WCAG 2.1 Levels A and AA:** The WAVE audit of Asher's main Shop page — the primary product browsing interface through which consumers navigate Defendant's product catalog — identified 240 accessibility errors. This extraordinary number of errors on a single page reflects comprehensive, site-wide inaccessibility of the Website's core commerce function. When Ms. Jenkins attempted to browse the Shop page on May 9, 2026, the combined effect of missing alt text, unlabeled controls, broken ARIA references, empty links, and structural coding errors made the page effectively unusable with NVDA. She could not browse product categories, identify available products, filter or sort the product listing, or navigate from the Shop page to individual product pages in a purposeful manner.
- **Empty links and non-descriptive link text (site-wide) — WCAG 2.1 Success Criteria 2.4.4, 2.4.9, 4.1.2, Failure F89:** Hyperlinks throughout the Website lacked accessible names or contained only non-descriptive text. When Ms. Jenkins navigated the Website using NVDA's link navigation, her screen reader announced "link" or read generic text such as "click here" with no information about the link's destination or purpose. This barrier prevented Ms. Jenkins from navigating the Website's structure, following links

from the Shop page to product category pages or individual product pages, or using navigation menus to locate the products she sought.

- **Very low contrast text (product pages and shop page) — WCAG 2.1 Success Criterion 1.4.3:** Text elements on the Website's product pages and Shop page had foreground-to-background contrast ratios below the 4.5:1 minimum required by WCAG 2.1 Success Criterion 1.4.3 for normal-sized body text. Retinitis Pigmentosa may preserve some residual central vision in certain stages of the disease; the contrast failures on the Website's pages ensured that even the limited visual perception Ms. Jenkins may retain could not be used to supplement her screen reader's output when evaluating products.
- **Structural coding errors disrupting page logic and screen-reader interpretation (site-wide) — WCAG 2.1 Success Criterion 1.3.1:** The Website contained structural coding errors — including improperly nested elements, malformed HTML, and other code defects — that disrupted the logical reading order and semantic interpretation of page content by screen-reading software. When NVDA encountered these structural errors, it announced page content in an illogical, unpredictable order, or skipped content entirely, preventing Ms. Jenkins from forming a coherent understanding of the pages she visited. This barrier affected her ability to browse product categories, compare products, and understand the relationship between navigation elements and product content on the Shop page and product pages she visited.

30. The foregoing barriers, individually and collectively, prevent Ms. Jenkins from independently navigating, browsing, selecting products, and completing purchases on www.ashers.com. They are pervasive throughout the Website, affecting the homepage, the main

Shop page, individual product pages, and the checkout process. They are systemic in nature and reflect a fundamental failure of the Website's underlying code and design to conform to recognized accessibility standards. The breadth and severity of these barriers — as evidenced by 240 errors on a single Shop page and 16 errors on a single product page, in addition to site-wide violations identified by SortSite version 35 — confirm that the inaccessibility of www.ashers.com is not the result of isolated oversights but of a wholesale failure to design or maintain the Website with accessibility in mind.

31. These barriers are not unique to Ms. Jenkins. They affect all individuals who rely on screen-reading software to access the internet, including NVDA and JAWS users. Each of the violations documented above has been confirmed as causing material interference with screen reader access across multiple major assistive technology platforms and browser combinations. The Class of affected individuals — all legally blind individuals in the United States who have attempted to access www.ashers.com and been denied full and equal access due to Defendant's failure to comply with WCAG 2.1 — numbers, on information and belief, in the hundreds if not thousands of individuals.

**E. Readily Achievable Barrier Removal**

32. The accessibility barriers identified above can be removed through readily achievable means. Adding meaningful alternative text to product images requires the insertion of descriptive text strings into existing HTML image tags — a task that can be performed by a developer in minutes per image and requires no architectural changes to the Website. Adding accessible names to buttons, form controls, and interactive elements requires the addition of ARIA labels or associated label elements to existing code — a well-documented remediation technique with widely available guidance from W3C and the DOJ. Correcting broken ARIA references requires

identifying and fixing mismatched element IDs. Correcting improper heading structure requires adding or correcting semantic heading tags in accordance with WCAG 2.1. Correcting contrast failures requires adjusting foreground and background color values to meet the 4.5:1 ratio. Correcting structural coding errors requires standard HTML validation and repair. Each of these remediation steps is well-documented, widely available, and low-cost. Barrier removal is readily achievable within the meaning of 42 U.S.C. § 12182(b)(2)(A)(iv).

33. Defendant, as the operator of a nationwide direct-to-consumer ecommerce platform generating substantial revenues from consumers across the United States, was fully on notice of its ADA website accessibility obligations and had ample resources to comply. The failure to remediate — despite years of operating www.ashers.com as a national ecommerce platform, the pervasive and systemic nature of the violations confirmed by the SortSite version 35 audit and the WAVE audits (including 240 errors on the Shop page alone), and the widespread availability of remediation resources, industry guidance, and technical expertise — reflects either a deliberate choice not to comply with Defendant's obligations under Title III and applicable state and city law, or a grossly negligent disregard of those obligations.

## CONCRETE INJURY AND INTENT TO RETURN

34. Ms. Jenkins suffered concrete, particularized, and ongoing injury on three specific dates — April 18, 2026, May 9, 2026, and June 2, 2026 — when she was denied full and equal access to www.ashers.com as a result of Defendant's pervasive accessibility failures. On each occasion, she was seeking to purchase specific products she had identified as uniquely available through Defendant's Website: the Dark Chocolate Covered Graham Crackers, gift-ready chocolate assortments, and sugar-free chocolate products described above. On each occasion, she was unable to evaluate the products, add them to her cart, or complete a purchase — not because of any fault

of her own, but solely because Defendant's Website was coded in a manner that was incompatible with her screen-reading software. As a result of Defendant's conduct, Ms. Jenkins suffered frustration, humiliation, and loss of dignity arising from being denied access to a retail platform that sighted consumers access without any barrier.

35. Ms. Jenkins's intent to return to www.ashers.com once the accessibility barriers are remediated is credible and grounded in the following specific, non-conclusory facts:

- Ms. Jenkins continues to have a specific, unmet desire to purchase Asher's Dark Chocolate Covered Graham Crackers, which remain listed for sale on the Website and which she has been unable to purchase solely because of the accessibility barriers documented herein.
- Ms. Jenkins has a specific, ongoing desire to purchase gift-ready Asher's chocolate assortments for personal gifting occasions, and sugar-free Asher's chocolate products for her own dietary preferences, both of which remain available through the Website.
- Ms. Jenkins visited www.ashers.com on three separate occasions within approximately seven weeks — April 18, May 9, and June 2, 2026 — demonstrating persistent and recurring interest in Defendant's products and Website.
- Asher's brand heritage (over 130 years of continuous family ownership, now in its fifth generation), its specific signature product formulations (including chocolate-covered graham crackers and pretzels), and its gift-quality packaging are not replicated by any other confectioner, making Defendant's Website the only source through which Ms. Jenkins can obtain these specific products.
- As a legally blind individual who cannot independently browse retail store shelves, read in-store labels, or visually compare products, Ms. Jenkins has no alternative means of

independently evaluating and purchasing Asher's branded products other than through an accessible version of Defendant's Website.

36. Ms. Jenkins's injury is ongoing. Defendant has no known policy or plan to ensure that www.ashers.com is accessible to blind and visually impaired users. The accessibility barriers documented herein were confirmed unremediated across all three of Ms. Jenkins's visits to the Website, reflecting the absence of any systematic effort by Defendant to comply with its ADA obligations. Ms. Jenkins is currently deterred from returning to www.ashers.com because she has reasonable grounds to believe, based on her three unsuccessful attempts, that the barriers will persist. She will return to the Website as soon as the barriers are remediated.

37. Defendant's failure to design, construct, maintain, and operate www.ashers.com in a manner that is accessible to blind and visually impaired individuals constitutes discrimination on the basis of disability under Title III of the ADA. Defendant's inaccessible Website denies blind and visually impaired consumers equal access to the goods, services, privileges, advantages, and accommodations that Defendant makes available to the general public, in violation of 42 U.S.C. § 12182(a).

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), on behalf of herself and a class of all other persons similarly situated (the "Class"), defined as follows:

*All legally blind individuals in the United States who have attempted to access www.ashers.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in compliance with WCAG 2.1 and Title III of the ADA, have been denied full and equal access to the goods, services, information, and functionality available on the Website.*

39. Plaintiff also brings this action on behalf of a subclass (the "New York Subclass"), defined as follows:

*All legally blind individuals in the State of New York who are members of the Class and who have been denied full and equal enjoyment of the goods, services, and advantages of www.ashers.com in violation of the New York State Human Rights Law ("NYSHRL"), the New York State Civil Rights Law ("NYSCRL"), and the New York City Human Rights Law ("NYCHRL").*

40. Numerosity. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery. According to the U.S. Census Bureau, approximately 7.6 million Americans have a visual disability. Given that www.ashers.com is a nationally operating ecommerce website that is visited by consumers throughout the United States, it is reasonable to infer that the Class consists of hundreds if not thousands of individuals who have attempted to access the Website and been denied full and equal access due to the accessibility barriers documented herein. The members of the Class may be identified through Defendant's Website analytics, server logs, and other records maintained in the ordinary course of business.

41. Commonality. There are questions of law and fact common to the Class that predominate over questions affecting individual members, including:

- Whether Defendant's Website, www.ashers.com, is a place of public accommodation subject to the accessibility requirements of Title III of the ADA;
- Whether Defendant failed to design, construct, maintain, and operate www.ashers.com in a manner that provides equal access to blind and visually impaired individuals, in violation of Title III;

- Whether the accessibility barriers identified by the SortSite version 35 audit and the WAVE audits are systemic, site-wide failures affecting all blind users who attempt to access the Website;
- Whether Defendant's failure to provide an accessible Website constitutes discrimination on the basis of disability under the ADA, NYSHRL, NYSCRL, and NYCHRL;
- Whether Plaintiff and members of the Class are entitled to injunctive relief requiring Defendant to bring www.ashers.com into conformance with WCAG 2.1 Level AA;
- Whether Plaintiff and members of the New York Subclass are entitled to compensatory, statutory, civil, and/or punitive damages under the NYSHRL, NYSCRL, and NYCHRL.

42. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff is a legally blind individual who, like the other members of the Class, relies on screen-reading software to access the internet and attempted to access www.ashers.com to purchase products, and was denied full and equal access due to the same pervasive and systemic accessibility barriers that affect all blind users of the Website. Plaintiff's claims arise from the same course of conduct by Defendant that gives rise to the claims of all Class members, and are based on the same legal theories. The relief Plaintiff seeks is the same relief that would benefit all members of the Class.

43. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that conflict with or are antagonistic to the interests of other Class members. Plaintiff is committed to the vigorous prosecution of this action. Plaintiff's counsel are experienced in the prosecution of civil rights class actions, including ADA website accessibility cases, and have the resources and expertise necessary to litigate this action to conclusion on behalf of the Class.

44. Rule 23(b)(2). This action is properly maintained as a class action pursuant to Federal

Rule of Civil Procedure 23(b)(2) because Defendant has acted on grounds generally applicable to the Class — specifically, by operating www.ashers.com as a nationally accessible ecommerce platform that systematically fails to comply with WCAG 2.1 and thereby denies full and equal access to all blind and visually impaired users — making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. Injunctive relief requiring Defendant to remediate www.ashers.com to conform to WCAG 2.1 Level AA would benefit all members of the Class equally and uniformly.

## CAUSES OF ACTION

### COUNT I
### Violations of Title III of the Americans with Disabilities Act
### 42 U.S.C. § 12181 et seq.
### (On Behalf of Plaintiff and the Nationwide Class)

45. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 44 as though fully set forth herein.

46. Title III of the ADA provides, in relevant part, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Defendant's discriminatory conduct includes, but is not limited to:

- (a) Denying Plaintiff and members of the Class the opportunity to participate in or benefit from Defendant's goods, services, and privileges on the basis of disability, in violation of 42 U.S.C. § 12182(b)(1)(A)(i);

- (b) Affording Plaintiff and members of the Class goods, services, and privileges that are not equal to those afforded to sighted individuals, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii);
- (c) Failing to take steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, where the provision of such services would not fundamentally alter the nature of the goods or services or result in an undue burden, in violation of 42 U.S.C. § 12182(b)(2)(A)(iii);
- (d) Failing to remove architectural, communication, and procedural barriers that are structural in nature and whose removal is readily achievable, as required by 42 U.S.C. § 12182(b)(2)(A)(iv); and
- (e) Failing to make reasonable modifications to policies, practices, and procedures to ensure that Plaintiff and members of the Class have equal access to the goods, services, facilities, privileges, advantages, and accommodations Defendant makes available to the general public, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).

47. Defendant's Website, www.ashers.com, is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7). Defendant's failure to design, construct, maintain, and operate the Website in a manner that is accessible to blind and visually impaired individuals constitutes discrimination within the meaning of 42 U.S.C. § 12182(b), as set forth above.

48. Plaintiff and members of the Class are entitled to injunctive relief requiring Defendant to remediate www.ashers.com to conform to WCAG 2.1 Level AA, the recognized benchmark for ADA website accessibility, pursuant to 42 U.S.C. § 12188(a)(2).

## COUNT II

**Violations of the New York State Human Rights Law**
**N.Y. Exec. Law §§ 290 et seq.**
**(On Behalf of Plaintiff and the New York Subclass)**

49. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 48 as though fully set forth herein.

50. The New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(2)(a), prohibits any person who is the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation from directly or indirectly refusing, withholding from, or denying to any person any of the accommodations, advantages, facilities, or privileges thereof on the basis of disability. Under N.Y. Exec. Law § 292(9), "place of public accommodation" is defined broadly to include retail stores and establishments of every kind.

51. Defendant's Website, www.ashers.com, is a place of public accommodation within the meaning of the NYSHRL, N.Y. Exec. Law § 292(9). By failing to design, construct, maintain, and operate www.ashers.com in a manner that is accessible to blind and visually impaired individuals, Defendant has directly and indirectly refused, withheld, and denied to Plaintiff and members of the New York Subclass the accommodations, advantages, facilities, services, and privileges of its Website and ecommerce platform on the basis of disability, in violation of N.Y. Exec. Law § 296(2)(a).

52. As a direct and proximate result of Defendant's violations of the NYSHRL, Plaintiff and members of the New York Subclass have suffered damages, including but not limited to frustration, humiliation, loss of dignity, and the loss of the benefit of equal access to Defendant's goods, services, and accommodations. Plaintiff and members of the New York Subclass are entitled to compensatory damages, injunctive relief, and attorneys' fees and costs pursuant to the

NYSHRL.

**COUNT III**
**Violations of the New York State Civil Rights Law**
**N.Y. Civ. Rights Law §§ 40, 40-c, 40-d**
**(On Behalf of Plaintiff and the New York Subclass)**

53. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 52 as though fully set forth herein.

54. The New York State Civil Rights Law ("NYSCRL"), N.Y. Civ. Rights Law § 40, provides that all persons within New York State shall be entitled to equal rights and privileges in places of public accommodation. Section 40-c of the NYSCRL prohibits discrimination in places of public accommodation on the basis of disability. Section 40-d imposes civil and criminal penalties for each violation of Section 40 or 40-c, including civil penalties of not less than $100 nor more than $500 for each violation.

55. Defendant's Website, www.ashers.com, is a place of public accommodation within the meaning of the NYSCRL. By maintaining a publicly accessible ecommerce website that systematically fails to provide equal access to blind and visually impaired users, Defendant has denied Plaintiff and members of the New York Subclass their rights to equal access to a place of public accommodation on the basis of disability, in violation of N.Y. Civ. Rights Law §§ 40 and 40-c.

56. As a direct and proximate result of Defendant's violations of the NYSCRL, Plaintiff and members of the New York Subclass are entitled to civil penalties of not less than $100 nor more than $500 per violation pursuant to N.Y. Civ. Rights Law § 40-d, as well as compensatory damages, injunctive relief, and attorneys' fees and costs.

**COUNT IV**
**Violations of the New York City Human Rights Law**
**N.Y.C. Admin. Code §§ 8-101 et seq.**

**(On Behalf of Plaintiff and the New York Subclass)**

57. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 56 as though fully set forth herein.

58. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a), provides that it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation because of any person's actual or perceived disability, to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation. The NYCHRL is to be construed broadly in all cases, in favor of discrimination plaintiffs, to the maximum extent that permits such a construction.

59. Defendant's Website, www.ashers.com, constitutes a place or provider of public accommodation within the meaning of the NYCHRL, N.Y.C. Admin. Code §§ 8-101 and 8-102. Defendant purposefully directs its ecommerce platform toward New York City consumers and derives substantial revenues from New York City consumers through the Website. By maintaining a Website that denies blind and visually impaired individuals full and equal access to its goods, services, and accommodations, Defendant has violated N.Y.C. Admin. Code § 8-107(4)(a).

60. As a direct and proximate result of Defendant's violations of the NYCHRL, Plaintiff and members of the New York Subclass have suffered damages. The NYCHRL provides for broad remedies, including compensatory and punitive damages, injunctive relief, and attorneys' fees and costs. The NYCHRL must be construed broadly to accomplish the remedial goals of the statute, which include the elimination of discriminatory treatment in all its forms and the provision of

equal access to the goods, services, and privileges of public accommodations to all persons, regardless of disability.

**COUNT V**
**Declaratory Relief**
**28 U.S.C. §§ 2201–2202**
**(On Behalf of Plaintiff and the Class)**

61. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 60 as though fully set forth herein.

62. An actual controversy has arisen and now exists between Plaintiff and the Class on the one hand, and Defendant on the other, concerning their respective rights and duties. Plaintiff contends that Defendant's Website, www.ashers.com, fails to comply with the requirements of Title III of the ADA, the NYSHRL, the NYSCRL, and the NYCHRL, and that this failure constitutes unlawful discrimination against Plaintiff and members of the Class on the basis of disability. Defendant has demonstrated through its continued operation of an inaccessible Website — confirmed unremediated across three separate visits by Plaintiff — that it disputes or disregards these obligations.

63. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff and the Class are entitled to a declaratory judgment that Defendant's Website, www.ashers.com, violates Title III of the ADA, 42 U.S.C. § 12182, and applicable state and city law, and that Defendant is required to bring its Website into full conformance with WCAG 2.1 Level AA so that it is accessible to blind and visually impaired individuals. A declaratory judgment in this case will resolve the controversy between the parties, serve the public interest by affirming the legal obligations of ecommerce operators under the ADA, and provide the foundation for the injunctive relief sought herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Angel Jenkins, on behalf of herself and all members of the Class and New York Subclass, respectfully prays for relief as follows:

**A.** An order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), designating Plaintiff as Class Representative and her counsel as Class Counsel;

**B.** A declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, that Defendant's Website, www.ashers.com, violates Title III of the ADA, 42 U.S.C. § 12182, the NYSHRL, N.Y. Exec. Law § 296(2)(a), the NYSCRL, N.Y. Civ. Rights Law §§ 40 and 40-c, and the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a), because it fails to provide full and equal access to blind and visually impaired individuals;

**C.** A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and applicable state and city law, requiring Defendant, within a time period to be established by the Court, to design, construct, maintain, and operate www.ashers.com in full conformance with WCAG 2.1 Level AA, and requiring Defendant to implement a policy of accessibility testing and maintenance to ensure ongoing compliance;

**D.** Compensatory damages to Plaintiff and members of the New York Subclass for injuries suffered as a result of Defendant's violations of the NYSHRL and NYCHRL, in an amount to be determined at trial;

**E.** Statutory and civil damages to Plaintiff and members of the New York Subclass pursuant to N.Y. Civ. Rights Law § 40-d (not less than $100 nor more than $500 per violation of the NYSCRL), and such punitive damages as may be available under the NYCHRL, in amounts to be determined at trial;

**F.** An award of reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, the NYSHRL, the NYSCRL, and the NYCHRL;

**G.** Such other and further relief as the Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Angel Jenkins hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
June 10, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
By: /s/ Robert Schonfeld
**Robert Schonfeld, Esq.**
JOSEPH & NORINSBERG, LLC
825 Third Avenue, Suite 2100
New York, New York 10022
Tel: (212) 227-5700
rschonfeld@employeejustice.com

Attorneys for Plaintiff and the Class